**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL SKELTON and DIANE ABBINANTI,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **Case No. 03 C 9009** |
| | ) | |
| **AMERICAN INTERCONTINENTAL UNIVERSITY ONLINE,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**AMENDED
<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Michael Skelton and Diane Abbinanti have sued their former employer,

American Intercontinental Online University, alleging violations of the Fair Labor Standards Act,

29 U.S.C. § 216(b), the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* and the Illinois

Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* for failure to pay overtime

compensation and retaliatory discharge.  AIUO has filed for summary judgment.

For the reasons stated below, the Court denies AIUO's motions for summary judgment as

to plaintiffs' claims under the FLSA and the overtime claim under the IMWL but grants AIUO's

motions as to plaintiffs' retaliation claims under the IMWL and IWPCA and as their claim under

the IWPCA.

**Facts**

AIUO is a for-profit college offering associate's, bachelor's, and master's degrees

through online courses.  Michael Skelton worked for AIUO in Hoffman Estates, Illinois from February 10, 2003 through July 17, 2003, when he was terminated.  Diane Abbinanti worked in the same AIUO office from August through October 2002, when she left voluntarily, and then again from January 10, 2003 until she was terminated on July 22, 2003.  Plaintiffs worked in the position of "admissions advisor."  As admissions advisors, plaintiffs called prospective students and sought to enroll them in one of the school's online programs.  Plaintiffs were responsible for recording on time sheets the hours they worked.  Hours worked beyond forty per week were considered overtime work and were compensated at a rate of time and a half.

AIUO grouped admissions advisors into teams that were supervised by a director of admissions.  Plaintiffs were part of a team supervised by national director of admissions, Mark Savasta, and director of admissions, Oma Rassul.   Plaintiffs allege that Savasta and Rassul, along with other AIUO managers, instructed them to work beyond forty hours per week but prohibited them from recording the overtime work on their time sheets, which resulted in plaintiffs not being compensated for the work.

On July 14, 2003, plaintiffs, along with fellow admissions advisors Gary Severs and Paul Vander Vennet, met with Judy Clinton, the head of human resources for AIUO.  They complained to Clinton that they were being instructed to work overtime but were prohibited from recording their overtime hours.  Skelton was fired from AIUO three days after the meeting with Clinton, and Abbinanti was fired eight days after the meeting.

**Discussion**

Summary judgment is proper only if, after considering all of the evidence and drawing all reasonable inferences in favor of the non-moving party, the Court determines that there are no

2

genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue of material

fact exists when a reasonable finder of fact could find in favor of the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1.    **Overtime compensation claims**

    A.    **FLSA**

As admissions advisors at AIUO, Skelton and Abbinanti were "employees" under the

FLSA and thus were entitled to the benefits and protections of the Act, including the FLSA's

guarantee of overtime compensation for overtime worked. 29 U.S.C. § 213; *Kennedy v.*

*Commonwealth Edison Co.*, 410 F.3d 365, 367 (7th Cir. 2005).

AIUO makes several arguments in support of its motions for summary judgment on

plaintiffs' claims for failure to pay overtime wages. First, AIUO asserts, and plaintiffs do not

dispute, that plaintiffs were paid for all overtime hours actually recorded on their time sheets.

Because company policy made employees responsible for recording their time, AIUO contends

that plaintiffs must bear the loss of any failure on their part to record their time.

AIUO's argument is unpersuasive. The FLSA makes clear that employers, not

employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate

record of all hours worked by employees. 29 U.S.C. § 211(c); *Anderson v. Mt. Clements Pottery*

*Co.*, 328 U.S. 680, 687 (1946). Thus, if plaintiffs have evidence sufficient to support a finding

that they were told not to record all their overtime, AIUO cannot hide behind a policy of having

employees keep their own time to avoid compensating the employees for all overtime hours

worked, including unrecorded hours. *See Walton v. United Consumers Club, Inc.*,786 F.2d 303,

314-15 (7th Cir. 1986) (because the FLSA requires "every employer to keep an accurate record of hours worked by each employee" the employer, rather than the employees, must suffer the consequences of inaccurate time sheets); *see also Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2004 WL 1882449, *4 (N.D. Ill. Aug. 18, 2004) (employer cannot "escape its responsibility to pay employees for all time worked by relying solely on the hours reported on employees' time sheets").

AIUO argues that plaintiffs have failed to present evidence showing that they actually worked unreported overtime hours.  Plaintiffs bear the burden of proving they performed overtime work for which they were not compensated.  *Mt. Clements*, 328 U.S. at 686-87.  This burden, however, is not an unsurmountable one.  *See id.* ("The remedial nature of this statute [FLSA] and great public policy which it embodies ... militate against making that burden an impossible hurdle for employees.").  Plaintiffs have provided the Court with sufficient evidence to create a triable issue of fact as to whether they performed overtime work which was not reported on time sheets and was therefore uncompensated.  Plaintiffs have testified that they were repeatedly instructed to record on their time sheets only forty hours of work per week, despite the number of hours actually worked, and that if they did report overtime, they were required to change their time sheets before they were submitted.  Skelton Dep. at 173-77 (time sheets that reflected more than forty hours of work per week were returned to the admission advisors to be changed to reflect only forty hours), 284-85 (instructed by supervisors to under-report time worked); Abbinanti Dep. at 128-29 (when she reported over forty hours on her time sheets, they were sent back for her to change to reflect only forty hours), 139-40 (under-reported overtime upon instruction from supervisors).

AIUO argues that plaintiffs' deposition testimony is merely "self-serving" and insufficient to defeat summary judgment, particularly in light of the fact that plaintiffs admit that they did not personally keep any documentary evidence reflecting the hours they worked but did not report.  Skelton Dep. at 165-66, 203-05; Abbinanti Dep. at 41-43, 55-56, 71, 186, 203.  But even it the fact that testimony is self-serving were a proper basis to exclude it or deem it insufficient – a doubtful proposition at best – plaintiffs have also submitted deposition testimony from more than ten other admissions advisors that corroborates their allegations.  *See, e.g.,* Harrison Dep. at 65-66 (Savasta told her "he would not pay us [admissions advisors on his team] for the overtime" worked); Langer Dep. at 90 (she did not report overtime hours, though she frequently worked over forty hours per week), 94-95 (Steve Fireng, president of AIUO, told her she should work overtime in order to meet enrollment goal, but she would not get paid for it); Myers Dep. at 56-57, 97-98 (instructed by manager to report forty hours per week of work, regardless of overtime hours worked); Vander Vennet Dep. at 19-21 (supervisor Mark Oleferchik told him to delete overtime from time sheet because he had failed to enroll enough students the previous week); Skarpac Decl. ¶¶ 12-15 (instructed by supervisors to work overtime but not to report it, therefore, overtime work was frequently not recorded on time sheets); Skarpac Dep. at 48-51 (overtime pay was only for high achievers, regardless of hours worked); Shain Dep. at 58-65 (did not record all of his overtime because Savasta informed him that there was a restriction on the number of overtime hours he could record on his time sheet, and Savasta would require him to alter his time sheet if he recorded too much time); Myers Decl. at ¶¶ 5-6 (supervisors instructed him not to record more than forty hours on his time sheets, despite the fact that he regularly worked fifteen hours of overtime per week for which he was not compensated); Owusu

Decl. at ¶ 5 (supervisors told him many times that it was AIUO's policy and practice not to pay admissions advisors for all overtime worked; consistent with that policy, Owusu was not paid for all overtime worked); Williamsbey Dep. at 73-75 (instructed by Savasta to change time sheets on three occasions to reflect fewer hours, the accurate time sheets were thrown out); Barrett Dep. at 36 (told that time sheets should always total forty hours, regardless of hours worked), 52 (required to change a time sheet to only reflect forty hours and was therefore uncompensated for overtime work).  After considering the testimony of plaintiffs and their co-workers, a reasonable finder of fact could conclude that plaintiffs worked overtime hours for which they were not compensated.

AIUO next contends that it had no knowledge of plaintiffs' unrecorded overtime work and therefore cannot be held liable under the FLSA for failing to pay for that work.  AIUO relies on *Bjornson v. Daido Metal U.S.A., Inc.*, 12 F. Supp. 2d 837, 841-41 (N.D. Ill. 1998), in which the court granted summary judgment in favor of the employer because the employee did not report the alleged unpaid overtime and did not provide evidence that the employer had actual or constructive knowledge of the alleged overtime.  In the present case, however, there is evidence from which a jury reasonably could find that AIUO had knowledge of the unreported overtime work claimed by plaintiffs.  Mark Savasta, plaintiffs' supervisor, admitted during his deposition that he allowed his admissions advisors to record overtime work on their time sheets only if they had enrolled five students in the previous week, regardless of the actual overtime hours worked. Savasta Dep. at 26.

Savasta's knowledge of plaintiffs' unreported overtime work is sufficient to show that AIUO was aware of the unreported overtime work.  *See Ladegaard*, 2004 WL 1882449, *4

(*citing Cunningham v. Gibson Electric Co.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999) ("Knowledge of a supervisor is imputed to the employer, and it is sufficient that a manager or supervisor, acting with reasonably diligence, had the opportunity to acquire knowledge."). In addition, however, Savasta admitted that Steve Fireng, the president of AIUO, knew of his five-enrollment overtime policy. Savasta Dep. at 26-27. A reasonable jury could find that AIUO knew plaintiffs were not reporting all the overtime hours they worked.[1]

Citing its employee handbook, AIUO argues that even if it had knowledge of plaintiffs' overtime work, it is not responsible for compensating them for the work because they failed to get prior approval from supervisors for working beyond forty hours per week. Def. Ex. 3 ( "[a]ll overtime work must receive the supervisor's *prior* authorization") (emphasis in original). AIUO's reliance on the policy stated in the handbook does not immunize it from FLSA liability, because plaintiffs have put forth evidence showing that preapproval was not the actual practice at AIUO. Skelton Dep. at 177-78 (admissions advisors were told by Savasta on a weekly basis to work overtime), 286 (informed by Fireng, Savasta and Rassul that the admissions advisor position was a 45-60 hour per week job); Abbinanti Dep. at 130 ("[t]here was no such thing as preapproved overtime," advisors had to work as long as it took to enroll thirty students by the end of the month), 171 (same); Finnigan Dep. at 75-76 (admissions advisors were expected to work

---

[1]AIUO also makes an estoppel argument based on plaintiffs' failure to report their overtime work on their time sheets. AIUO's estoppel claim relies on *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972), in which the court held the plaintiff was estopped from charging the employer with failure to pay overtime wages because she failed to report her overtime hours to the employer. The court's decision was based on undisputed evidence that the employer was unaware that the employee was under-reporting her overtime hours and that the employee willfully chose to under-report her hours. *Brumbelow*, therefore, has no bearing on the present case, in which plaintiffs have provided evidence that AIUO required them to work overtime and prohibited them from recording those overtime hours on time sheets.

overtime); Skarpac Dep. at 79-83 (instructed not to leave work until he made his numbers);

Myers Dep. at 57 (told many times to work whatever hours it took to make his numbers for the

month).   In addition to deposition testimony, plaintiffs have presented the Court with a

memorandum that was distributed and displayed for admissions advisors titled "Should I Stay or

Should I Go."  Pl. Ex. O.  The memorandum is a "daily checklist" of tasks admissions advisors

should be performing everyday.  The end of the checklist states that if advisors have completed

all of the tasks listed, they are done for the day.  *Id.*  If not, it states that employees should stay at

work an extra thirty to sixty minutes in order to complete everything.  *Id.*  Plaintiffs submitted the

"Should I Stay or Should I Go" memo as evidence tending to show that overtime work was

approved and, in fact, encouraged.  In its current form, the memorandum contains a warning that

admissions advisors should seek approval for overtime from their supervisors.  Id. ("Please see

your DOA to approve overtime.").  But witnesses have testified that the memo originally did not

contain the preapproval warning, Abbinanti Dep. at 223-24; Finnigan Dep. at 75-76, and that the

warning was added only after plaintiffs filed the present lawsuit.  *See, e.g.,* Vander Vennet Dep.

at 165 (preapproval language was only published to employees after plaintiffs filed their lawsuit).

Though plaintiffs are unable to produce a copy of the purported original "Should I Stay or Should

I Go" memo, the testimony about the memo, considered together with the extensive testimony

regarding encouragement by AIUO managers to work overtime whenever necessary, is sufficient

to permit a reasonable jury to find that AIUO did not require preapproval of overtime work.

In sum, plaintiffs have presented sufficient evidence for a reasonable trier of fact to

conclude that they had a blanket "preapproval" to work overtime to meet job expectations.

**B.     IMWL**

The IMWL parallels the FLSA, and thus the same analysis applies to claims made under the IMWL and FLSA. *Haynes v. Tru-Green Corp.*, 154 Ill. App. 3d 967, 977, 507 N.E.2d 945, 951 (1987); *Ladegaard v. Hard Rock Concrete Cutters*, Inc., No. 00 C 5755, 2004 WL 1882449, *4 (N.D. Ill. Aug. 18, 2004). It follows, therefore, that plaintiffs' IMWL overtime claims survive summary judgment.

### C.    IWPCA

The Illinois Wage Payment and Collection Act, unlike the IMWL, requires that a claim for compensation be based on a "contract or agreement" between employer and employee. 820 ILCS 115/2. Plaintiffs contend that AIUO's employee handbook, which states that employees are entitled to overtime wages, constitutes a "contract or agreement" under the IWPCA. *See* Def. Ex. 3 ("Overtime compensation is paid to all eligible employees in accordance with federal and state wage and hour restrictions").

The employee handbook does not constitute a "contract" within the meaning of the IWPCA. In Illinois, "an employee handbook ... creates enforceable contractual rights if the traditional requirements for contract formation [offer, acceptance, and consideration] are present." *Duldulao v. St. Mary of Nazareth Hosp. Center,* 115 Ill. 2d 482, 490, 505 N.E.2d 314, 218 (1987). An express disclaimer within the employee handbook negates a finding of contract formation. *Id.* The AIUO handbook contained such a disclaimer; it states that "[n]othing in this Handbook, or in any of the Company's policies, practices, or representations to or about its employees, is an express or implied contract." Def. Ex. 2. This disclaimer is fatal to plaintiffs' claim that the handbook was a "contract" to pay overtime wages within the meaning of the IWPCA. *See Tatom v. Ameritech Corp.,* 305 F.3d 737, 743 (7th Cir. 2002); *In re Comdisco, Inc.,*

Nos. 02 C 7030 & 02 C 7031, 2003 WL 685645, at *4 (N.D. Ill. Feb. 27, 2003); *Hanna v.*

*Marshall Field & Co.,* 279 Ill. App. 2d 784, 790, 665 N.E.2d 343, 348 (1996).

Recent Illinois cases have made it clear, however, that a plaintiff may pursue a IWPCA

claim based on an "agreement" to pay wages that falls short of a legally enforceable contract.

*See, e.g., Catania v. Local 4250 / 5050, Communications Workers of America,* ___ Ill. App. 3d

___, ___ N.E.2d ___, 2005 WL 1981055, at *4 (Ill. App. Aug. 17, 2005); *Landers-Scelfo v.*

*Corporate Office Systems, Inc.,* 356 Ill. App. 3d 1060, 1067-68, 827 N.E.2d 1051, 1059 (2005).

These courts have concluded that under the IWPCA, "'[a]n 'agreement' is broader than a

contract and requires only a manifestation of mutual assent on the part of two or more persons;

parties may enter into an 'agreement' without the formalities and accompanying legal protections

of a contract.'" *Landers-Scelfo,* 356 Ill. App. 3d at 1067-68, 827 N.E.2d at 1059 (quoting

*Zabinsky v. Gelber Group, Inc.,* 347 Ill. App. 3d 243, 249, 807 N.E.2d 666, 671 (2004)).  None

of the cases cited by plaintiff, however, concerned whether representations in an employee

handbook containing a disclaimer like the one in AIUO's handbook could be relied upon to

create "mutual assent."  The Court agrees with defendant that AIUO's express disclaimer

undermines any claim of mutuality of assent based on the representations in the employee

handbook, which is all the plaintiffs cite in support of their claim (they make no claim of a

regular practice of paying overtime wages upon which they relied).[2]

---

[2] It is difficult to see what the IWPCA would add to plaintiffs' claims in the circumstances presented here, as the purported promise cited as the basis for an IWPCA-enforceable "agreement" simply tracked whatever obligations AIUO had under state and federal law to pay overtime.

2.      **Retaliatory discharge claims**

  A.      **FLSA**

Plaintiffs contend that they were terminated by AIUO in retaliation for blowing the

whistle on AIUO's failure to pay overtime wages in violation of the FLSA.  To avoid summary

judgment, plaintiffs must submit evidence from which a jury could find they were terminated

because of activity protected by the FLSA, by either the direct method of proof or by the indirect

*McDonnell Douglas* burden-shifting method.  *Stone v. City of Indianapolis Pub. Util. Div.*, 281

F.3d 640, 644 (7th Cir. 2002).

  "The direct method of proof permits a plaintiff to show, by way of direct or

circumstantial evidence," that her termination was motivated by an impermissible purpose.

*Rhodes v. Ill. Dept. of Transportation*, 359 F.3d 498 (2004).  To prove retaliation under the direct

method, plaintiffs must present direct evidence of (1) a statutorily protected activity; (2) an

adverse employment action; and (3) a causal connection between the two.  *Sitar v. Indiana Dept.*

*of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003).

Plaintiffs claim that their meeting with Clinton, the head of human resources at AIUO,

qualified as a protected activity under the FLSA.  The FLSA protects workers from retaliation on

the basis of filing a complaint, instituting a proceeding, or testifying in a proceeding regarding a

complaint made under the Act.  29 U.S.C. § 215(a)(3).  AIUO argues that internal verbal

complaints, such as plaintiffs' complaints to Clinton, are not protected by the FLSA.  In so

arguing, AIUO relies on *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), in which the

Second Circuit held that the plain language of the FLSA retaliation provision "limits the cause of

action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does

not encompass complaints made to human resources representatives." *Lambert*, however, represents the minority view of the breadth of coverage of § 215(a)(3).  Though the Seventh Circuit has so far declined to rule on this exact issue, the First, Third, Sixth, Eleventh, Ninth, and Tenth Circuits, and several judges in this District, have all found that an oral, internal complaint triggers anti-retaliation protection under the FLSA.  *Lambert v. Ackerley*, 180 F.3d 997, 1002-08 (9th Cir. 1999) (en banc); *Connor v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997); *Valerio v. Putnam  Assoc. Inc.,* 173 F. 3d 35, 41 (1st Cir. 1999); *EEOC v. Romeo Community Schools*, 976 F.2d 985, 989-90 (6th Cir. 1992); *EEOC v. White & Sons Enterprises*, 881 F.2d 1011-12 (11th Cir. 1989); *Brock v. Richardson*, 812 F.2d 121, 124-25 (3d Cir. 1987); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir. 1975); *Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1283 (N.D. Ill. 1996); *Degrange v. Richard Wolf Medical Instruments Corp.*, No. 99 C 3614, 2000 WL 1368043, *2 (N.D. Ill. Sept. 15, 2000).  The Court agrees with the reasoning of the overwhelming majority view, which is based on the broad, remedial purposes of the FLSA.  *See generally Tennessee Coal, Iron, and R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944).  Plaintiffs' complaints to the head of human resources constituted protected activity under the FLSA.

AIUO argues that even if plaintiffs' activities were protected, they fail to present direct evidence of retaliation and therefore must proceed under the *McDonnell Douglas* burden-shifting method.  AIUO's argument represents a misunderstanding of the requirements of the direct method of proof.  The direct method of proof permits a plaintiff to show, "by way of direct *or* circumstantial evidence," that her termination was motivated by an impermissible purpose. *Rhodes v. Ill. Dept. of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004) (emphasis added).

12

Plaintiffs have presented the Court with both direct and circumstantial evidence of retaliatory discharge.  This direct evidence includes deposition testimony from a fellow admissions advisor that Savasta told her he fired Skelton for complaining to human resources, and that she would suffer the same fate if she complained, Harrison Dep. at 240, and testimony from Vander Vennet that Savasta threatened to fire him if he complained "behind his back again" to human resources.  Vander Vennet Dep. at 16.

Plaintiffs also present circumstantial evidence of retaliatory discharge.  The Seventh Circuit has identified three types of circumstantial evidence.  *See Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).  The most common type includes "ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence not conclusive in itself but together composing a convincing mosaic."  *Id.*  The second type of circumstantial evidence is evidence that similarly situated employees were treated better.  *Id.* The third type is evidence showing that the employer's stated reason for the termination is merely pretext.  *Id.*  Each type of evidence can be sufficient by itself to defeat summary judgment, or the types can be used in combination, as long as the evidence "point[s] directly to a discriminatory reason for the employer's action."  *Adams v. Wal Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

Plaintiffs have presented the Court with what the jury could find to be a "convincing mosaic" of circumstantial evidence.  Both Abbinanti and Skelton contend that the timing of their terminations, eight and three days, respectively, after the meeting with Clinton, was suspicious.  Furthermore, they argue that Vander Vennet and Severs, the two admissions advisors also present at the meeting with Clinton, suffered retaliation, though not termination, within a week of

the meeting.  Severs Dep. at 192-93, 209 (he was denied training opportunities provided to similarly situated employees); Vander Vennet Dep. at 36-37 (he was transferred to another team in July 2003).

In addition, plaintiffs present evidence that the stated reasons for their terminations were pretextual.  Abbinanti was purportedly fired because she was medically unable to work at the time, per doctor's orders, but had exhausted her medical leave benefits and therefore had to be let go.  Abbinanti contends the actual policy at AIUO was to provide sick employees with indefinite leave.  She supports this with records of other employees who took significant amounts of medical leave and were not fired, *see* Pl. Resp. to Def. Facts ¶ 65; Langer Dep. at 7-8; Pl. Ex. K; Pl. Ex. M, and, perhaps more importantly, with a declaration from Joseph Sova, AIUO's former vice president of human resources, to the effect that AIUO's policy from 2003 through January 2005 was not to fire any employee because they ran out of sick or disability leave.  Sova Decl. ¶ 18.  Skelton was allegedly fired for poor performance.  Though he concedes that he was put on a plan to increase his performance a week before being terminated, he presents business records showing that his performance was the same or better than fifteen other admissions advisors, all of whom were not terminated.  *See* Enrollment Statistics, Bowie Decl., Ex. A.

Plaintiffs have one final hurdle to overcome to defeat summary judgment.  They must show that the person who made the decision to terminate them was aware of their complaints about unpaid overtime at the time of the termination.  *Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir. 2000).  Plaintiffs have satisfied this burden by presenting evidence that upper-level management, including the president and vice president of AIUO, and lower-level decision makers such as Savasta, knew about plaintiffs' meeting with Clinton.  Severs Dep. at 58-60;

14

Vander Vennet Dep. at 16; Harrison Dep. at 240. In addition to deposition testimony, plaintiffs

also present an e-mail written by Jennifer Serviss, Clinton's supervisor, to Jeremy Wheaton, vice

president of AIUO. Pl. Ex. A. The e-mail explains that four admissions advisors went to see

Clinton on July 14 to complain of compensation issues that "will cost us big in penalties and

back pay" if found to be true. *Id.* Serviss wrote that she told Clinton to make Wheaton aware of

the issues and "to set up a meeting with Steve [Fireng] for tomorrow to make him aware that if

those things are happening, they are illegal (not paying overtime but requiring employees to work

overtime, telling them they cannot have a lunch if they don't make enough calls, etc)." *Id.* This

e-mail would permit a reasonable jury to find that upper-level management at AIUO was well

aware of plaintiffs' meeting with Clinton on July 14, 2003.

 For these reasons, the Court finds that genuine issues of material fact exist precluding

summary judgment on plaintiffs' claims of retaliatory discharge. Because plaintiffs present

sufficient evidence to overcome summary judgment under the direct/circumstantial evidence

method, an analysis under the indirect method is unnecessary.[3]

---

 [3]In a final effort to avoid summary judgment, AIUO argues that the Court should grant summary judgment because neither plaintiff suffered damages as a result of being discharged. AIUO argues that Abbinanti has not damages because at the time of her termination, she was on unpaid leave. Abbinanti does not dispute that she was on unpaid leave but argues that she is eligible for lost benefits and back pay because she would have returned to work on August 1, 2003 had she not been terminated. Abbinanti Dep. at 336-37. Instead, she had to take a new job that pays her significantly less than her job at AIUO. *Id.* at 342. Thus, there is evidence that she suffered damages as a result of being terminated.

 AIUO argues that Skelton's ability to recover damages is severely limited because he admitted falsifying his employment application and resume. Def. Ex. 23 & 24. AIUO argues that it would have fired Skelton immediately had it discovered this during his employment and that the after-acquired evidence doctrine prevents Skelton from claiming damages except for back pay from the date of discovery. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995). But Skelton has presented the Court with evidence suggesting AIUO knew before hiring him that he had made misrepresentations in his resume. *See* Pl. Ex. P. This evidence

B.      **IWPCA and IMWL**

The IWPCA provides for criminal penalties for retaliatory discharge but provides no express civil remedy.  820 ILCS 115/14(c) (retaliation is a Class C misdemeanor).  Plaintiffs argue that the Act should be interpreted as giving rise to an implied civil remedy.  The most recent Illinois case on the issue, however, holds that there is no implied right of action for retaliatory discharge under the IWPCA.  *McGrath v. CCC Information Svcs., Inc.*, 314 Ill. App. 3d 431, 443, 731 N.E.2d 384, 393 (2000).  The *McGrath* court reasoned that the purpose of the Act was to stop employers from retaliating against employees for compensation complaints and that the establishment of criminal penalties was sufficient to carry out this purpose.  *Id.*  The court also relied on the Illinois Supreme Court's "historic reluctance to expand the tort" of retaliatory discharge and its hesitation to imply rights of action without explicit legislative authority.  *Id.* at 443, 731 N.E.2d at 393.  Thus, the court held that "a private action for retaliatory discharge is not necessary to provide an adequate remedy for discharging an employee who attempts to enforce his rights under the IWPCA."  *Id.*

Because the IMWL also provides for criminal penalties for retaliatory discharge and does not contain an express private right of action for retaliatory discharge, AIUO asserts that plaintiffs are likewise barred from bringing a claim for retaliatory discharge under the IMWL. 820 ILCS 105/11(c) (retaliation is a Class B misdemeanor).  Though the Court could find no Illinois case to have ruled on the issue one way or the other (and the parties have provided none), the policy concerns expressed in *McGrath* regarding whether the IWPCA apply with equal force

creates a genuine issue of fact as to whether Skelton would have been fired had AIUO known of the misrepresentations on his employment application.

to the IMWL.  The intent of the IMWL's retaliation provision of the IMWL is to deter employers

from retaliating, just as it is under the IWPCA.  The criminal penalties in the IMWL are

sufficient to deter retaliation, and therefore, a civil right of action for retaliatory discharge is

unnecessary.  For this reason, the Court hold that plaintiffs' IMWL retaliatory discharge claim is

likewise barred.

**Conclusion**

For the reasons stated above, the Court grants AIUO's motion for summary judgment

[docket nos. 74 & 75] in part and denies it in part.  Summary judgment is granted in AIUO's

favor on plaintiffs' retaliation claims made under Illinois law and on the overtime claim under

the IWPCA (counts four and six); AIUO's motion is denied on plaintiffs' FLSA claims and claim

of failure to pay overtime wages under the IMWL (counts one, two, three, and five).  The case is

set for a status hearing on August 29, 2005 at 9:30 a.m. for the purpose of setting a trial date.

Trial counsel are directed to appear and should be prepared to discuss the anticipated length of

trial.


                                                        /s/  Matthew F. Kennelly
                                                         MATTHEW F. KENNELLY
                                                    United States District Court

Date:  October 11, 2005